IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHARLES ANTHONY STANLEY          ) Civ. No. 05-00716 ACK/LEK
                                 )
          Plaintiff,             )
                                 )
     v.                          )
                                 )
SCOTT GOODWIN, SEARS & ROEBUCK,  )
INC., MR. "DOE" LACEY ITS        )
C.E.O., JOHN & JANE DOES 1-10,   )
DOE CORPORATIONS 1-10,           )
PARTNERSHIPS 1-10, GOVERNMENTAL  )
ENTITIES 1-100,                  )
                                 )
          Defendants.            )
_____)

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE;
DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; DENYING
DEFENDANTS' MOTION TO STRIKE; AND NOT ADDRESSING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

BACKGROUND

I.   Procedural Background

          Pro se Plaintiff Charles Anthony Stanley ("Plaintiff")

initiated this action by filing a complaint against Scott Goodwin

("Goodwin"), Sears & Roebuck, Inc. ("Sears"), and its C.E.O. Mr.

"doe" Lacey ("Lacey") (hereafter collectively "Defendants") on

November 15, 2005.  On December 22, 2005, Magistrate Judge

Kobayashi granted Plaintiff's Motion to Amend his complaint.

Plaintiff then filed an amended Civil Complaint Under U.S.C. 1983

1

on January 10, 2006 ("Amended Complaint").

On February 10, 2006, Magistrate Kobayashi issued an Order granting Defendants' Ex Parte Application for Extension of Date to Respond to Plaintiff's Complaint.  The response date was set for February 28, 2006.

On February 27, 2006, Plaintiff filed two motions. Plaintiff filed a Motion for Default Judgment and a Motion for Summary Judgment.  The motions were signed by Plaintiff on February 12, 2006, and the delay in filing may be attributed to Plaintiff's incarceration in Mississippi.

On February 28, 2006, Defendants filed a Motion to Dismiss the Amended Complaint ("Motion to Dismiss").

On March 6, 2006, Plaintiff filed a Notice of Financial Change.  The Court construed Plaintiff's filing as a request for an extension of time to file oppositions and replies in the pending motions.  On March 8, 2006, the Court granted Plaintiff's request and set the opposition deadline for all motions at April 27, 2006 and the reply deadline at May 11, 2006.

On March 10, 2006, Defendants filed a Motion to (1) Strike Plaintiff's (a) Motion for Default Judgment, (b) Motion for Summary Judgment, and (c) Notice of Financial Change; and (2)

to Continue Scheduling Conference.[1]

On April 3, 2006, Plaintiff filed an Opposition to Defendants' Motion to Dismiss ("MTD Opposition").

On April 27, 2006, Defendants filed an Opposition to Plaintiff's Motion for Default Judgment and an Opposition to Plaintiff's Motion for Summary Judgment ("MSJ Opposition").

On May 10, 2006, Defendants filed a Reply Memorandum in Support of their Motion to Dismiss ("MTD Reply").

On May 15, 2006, Plaintiff filed a Motion in Support of Summary Judgment Admissions and Uncontested Material Concise Statement Local Rule 56.1(a). The Court construes this document to be a reply to Defendants' MSJ Opposition (hereafter "MSJ Reply"). The Court notes that Plaintiff signed this document on May 10, 2006.

On May 30, 2006, Plaintiff filed a Supplement of Authorities Uncited Which Support Pro Se Argument in Support of Opposition to Color of Law ("MSJ Reply Supplement").

On June 8, 2006, Defendants filed Objections to Plaintiff's Supplemental Motion filed on May 10, 2006.

---

[1]   The Court had already addressed Plaintiff's Notice of Financial Change at this time and Plaintiff's Motions for Default and Summary Judgment were considered at the July 31, 2006 hearing. Defendants' arguments to strike the motions are subsumed by their oppositions to the motions and are considered by the Court. Accordingly, the Court DENIES Defendants' Motion to Strike. Magistrate Kobayashi addressed the request to continue the scheduling conference.

On July 27, 2006, Plaintiff filed a Request to Name Persons Needed for Just Adjudication.  Plaintiff seeks to add the following defendants: the State of Hawaii, Prosecutors Peter B. Carlisle, Dean Young and Christopher Van Marter, Honolulu Police Officer Winston Leong, Sears Security Chief Bernard Ching, and Sears Security Guards Jennifer Genck and Brendon Wong.

The parties appeared before the Court for a hearing to address the four motions on July 31, 2006.

## II.  **Factual Background**[2]

Plaintiff's claims and request for relief against Defendants arise out of the alleged events that transpired on December 31, 2003 at Sears' Ala Moana store.  According to Plaintiff, he was exiting the store carrying a large black gym bag with a shoulder strap.  Amended Complaint ¶ 9.  He was suddenly tapped on the shoulder and grabbed from behind by the neck.  Id. ¶ 10.  Plaintiff was then choked and slammed to the ground, causing him to lose control of his bodily functions.  Id. ¶ 11.  At this point, Plaintiff was handcuffed and dragged back into Sears, where he was handcuffed to a bench.  Id. ¶ 12.  From the Plaintiff's Complaint, it is apparent that security guards Goodwin and Jennifer Genck described the ordeal differently.

---

[2]  The facts as recited in this Order are for the purpose of disposing of these motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Ultimately, Goodwin reported that Plaintiff assumed an aggressive posture when instructed to halt upon leaving the store.  Id. ¶ 31.  In addition, Genck claimed that she was assaulted by Plaintiff as he struck her with his elbow.  Id. ¶ 29.

Plaintiff admits that the security guards opened his bag and found a pair of pants and shirt that belonged to Sears, valued at $97.00.  Amended Complaint ¶¶ 19, 20.  Plaintiff then informed the guards that he was going to sue them for assaulting him.  Id. ¶ 23.  Plaintiff observed the guards reviewing the surveillance tapes and overheard them making comments about his previous conduct after doing a background check.  Id. ¶ 24.  Subsequently, a Honolulu police officer, Winston Leong, arrived on the scene.  He watched the surveillance tape and, as reported by Plaintiff, determined that the tapes were inconclusive.

Plaintiff was arrested and charged with robbery in the second degree.  H.R.S. § 708-841(1)(a).  A Judicial Determination of Probable Cause for the Extended Restraint of Liberty of Warrantless Arrestee, Plaintiff, based on Leong's Affidavit was issued on January 1, 2004.  The State filed a Complaint alleging Plaintiff committed robbery in the second degree on January 7, 2004, and Plaintiff was convicted on February 24, 2005.  At that time, Plaintiff was sentenced to ten years incarceration with a mandatory minimum of three years and four months.

## STANDARD

### I.   Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), in deciding a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Wileman Bros. & Elliott, Inc. v. Giannini, 909 F.2d 332, 334 (9th Cir. 1990); Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged under a cognizable legal theory.  Balistreri, 909 F.2d at 699, Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1979).  The Court

must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims.  <u>Id.</u>

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as lack of jurisdiction or the statute of limitations.  2A J. Moore, W. Taggart & J. Wicker, <u>Moore's Federal Practice</u>, ¶12.07 at 12-68 to 12-69 (2d ed. 1991 & supp. 1191-92) (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976) (emphasis added)).

## II.  <u>Special Considerations for a Pro Se Litigant</u>

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004); <u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir. 1987).  When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant.  <u>Draper v. Coombs</u>, 792 F.2d 915, 924 (9th Cir. 1986); <u>Pembrook v. Wilson</u>, 370 F.2d 37, 39-40 (9th Cir. 1966).  However, "a pro se litigant is not excused from knowing the most basic pleading requirements."  <u>American Ass'n of Naturopathic Physicians v. Hayhurst</u>, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted).

Before a district court may dismiss a pro se complaint

for failure to state a claim upon which relief can be granted, the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal, unless amendment is futile.  <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992); <u>Eldridge</u>, 832 F.2d at 1136.

## DISCUSSION

### I.  Motion for Default Judgment

On February 27, 2006, Plaintiff filed a Motion for Entry of Default Judgment pursuant to Federal Rule of Civil Procedure 55.  Rule 55(a) states "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and the fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).

Plaintiff alleges that Defendants have violated Rule 12(a)(1)(A).  "Unless a different time is prescribed in a statute of the United States, a defendant shall serve an answer within 20 days of being served with the summons and complaint . . . ."  Fed. R. Civ. P. 12(a)(1)(a).  Plaintiff alleges that Defendants failed to answer his complaint within the twenty day time period prescribed by the Rule.  However, Magistrate Kobayashi issued an Order Granting Ex Parte Application For Extension Of Date To

8

Respond To Civil Complaint on February 10, 2006.[3]

Magistrate Kobayashi issued this Order extending Defendants' deadline for filing their answers to February 28, 2006 after finding good cause to do so.  Pursuant to Local Rule 6.2(c) a judge may grant an ex parte motion for an enlargement or extension of time if a party could not obtain the extension by stipulation.

Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6) on February 28, 2006.  In doing so, Defendants met the extended deadline to respond to Plaintiff's Complaint.

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Entry of Default Judgment.

## II. **Motion to Dismiss**

Pro se Plaintiff brought his action pursuant to 42 U.S.C. § 1983 (2006) ("Section 1983"), alleging that he suffered injuries as a result of Defendant's conduct under the color of state law.  Plaintiff's two causes of action assert that

---

[3] The Court notes that it is likely that Plaintiff was unaware of the Order when he prepared his Motions for Default and Summary Judgment.  The Order was issued on February 10, 2006 and Plaintiff signed his Motion on February 12, 2006.  Plaintiff is incarcerated in Mississippi and it is unlikely that he would have been made aware of Magistrate Kobayashi's Order in such a short period of time.  The fact that his Motion was not actually filed until February 27, 2006 underscores the potential delays in this case.

Defendants engaged in conduct in violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights guaranteed by the United States Constitution.  Specifically, Plaintiff claims all Defendants are liable for "policies, practices, customs, being aware of circumstances that result in deliberate indifference and reckless disregard to the constitutional rights of others, they show a pattern of setting up misdemeanor petty theft suspects . . . for false felony convictions . . . ."  Amended Complaint ¶ 37. In addition, Defendants' conduct allegedly resulted in physical injuries, false accusations, wrongful imprisonment, pain and suffering, and emotional and psychological distress.  Id. ¶ 38.

Defendants move to dismiss all of Plaintiff's claims against them on three grounds.  First, Defendants argue that the Amended Complaint fails to state a claim under Section 1983 and should be dismissed pursuant to Rule 12(b)(6).  Second, they contend that the action is barred by res judicata.  Third, Defendants claim that Plaintiff failed to properly serve Defendants, and therefore the case should be dismissed for insufficiency of process and lack of personal jurisdiction.  The Court first addresses Defendants' contention that the case should be dismissed for insufficiency of service of process.

Defendants assert that Plaintiff's claims ought to be dismissed pursuant to Rule 12(b)(5) for insufficiency of service and Rule 12(b)(2) for lack of personal jurisdiction.  They allege

that Plaintiff failed to properly serve Defendants pursuant to
Federal Rule of Civil Procedure ("FRCP") 4 or Hawaii Rule of
Civil Procedure ("HRCP") 4.

FRCP 4 provides that the plaintiff is responsible for
the service of the complaint and summons within the time allowed
under subsection (m)[4] and shall provide copies of the summons and
complaint to the person effecting service.  Fed. R. Civ. P.
4(c)(1).  Thus, Plaintiff had 120 days from November 15, 2005,
when he filed his original complaint, to effect service on
Defendants.  Plaintiff did not properly effect service on any
Defendants by March 15, 2006, the FRCP 4(m) deadline.

FRCP 4(e) governs service upon individuals within a
judicial district of the United States.  It states:

> Unless otherwise provided by federal law, service upon
> an individual from whom a waiver has not been obtained
> and filed, other than an infant or an incompetent
> person, may be effected in any judicial district of the
> United States:
>
> **(1)** pursuant to the law of the state in which the

---

[4]   **Time Limit for Service.** If service of the summons and
complaint is not made upon a defendant within 120 days
after the filing of the complaint, the court, upon
motion or on its own initiative after notice to the
plaintiff, shall dismiss the action without prejudice
as to that defendant or direct that service be effected
within a specified time; provided that if the plaintiff
shows good cause for the failure, the court shall
extend the time for service for an appropriate period.
This subdivision does not apply to service in a foreign
country pursuant to subdivision (f) or (j)(1).

Fed. R. Civ. P. 4(m).

district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

**(2)** by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  HRCP 4 mandates service of an individual in precisely the same manner as FRCP 4(e)(2).  Thus, Plaintiff was required to serve Defendants Goodwin and Lacey personally, at their homes, or with an agent authorized by law to accept service for them.  Plaintiff only attempted to serve Goodwin and Lacey by sending a copy of the Complaint or Amended Complaint by certified mail to the Sears store located on Ala Moana Boulevard.  In doing so, Plaintiff failed to meet the service requirements prescribed by FRCP 4 and echoed by HRCP 4.

FRCP 4(h) governs service upon corporations in pertinent part as follows:

Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected:

**(1)** in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a

12

> managing or general agent, or to any other agent
> authorized by appointment or by law to receive
> service of process and, if the agent is one
> authorized by statute to receive service and the
> statute so requires, by also mailing a copy to the
> defendant . . . .

Fed. R. Civ. P. 4(h).  Plaintiff also attempted to serve

Defendant Sears by sending a copy of the Complaint through

certified mail to the Sears store on Ala Moana Boulevard.  This

attempt does not comply with any of the possible personal service

methods outlined in FRCP 4(e) or the methods for serving a

corporation as outlined in FRCP 4(h).

The Court concludes that Plaintiff has failed to effect

service on Defendants as prescribed in FRCP 4.  Consequently, the

Court GRANTS Defendants' Motion to Dismiss pursuant to Rule

12(b)(5) for insufficiency of service of process. Plaintiff's

claims against Defendants are dismissed without prejudice

pursuant to Rule 4(m).  As a result, the Court need not address

Plaintiff's Motion for Summary Judgment.  The Court will use this

opportunity to inform Plaintiff of the deficiencies in his

Amended Complaint in the event that he elects to file new

claims.[5]

--------

[5]  Plaintiff filed a "Request to Name Persons Needed for
Just Adjudication" on July 27, 2006.  The Court will not rule on
this request to name "doe" defendants as the case is now
dismissed, but instructs Plaintiff to undergo the same cautious
analysis of the deficiencies outlined in this Order before filing
suit against the individuals named in his new request.

## III. **Deficiencies in Complaint**

At this point, the Court believes that Plaintiff has presented insufficient allegations to support the claims that he has filed against Defendants.  There are deficiencies in Plaintiff's Section 1983 claims as they are asserted in the Amended Complaint and the possibility exists that the claims are barred by res judicata.

## A.   **Res Judicata**

To determine whether a state court decision precludes a party from litigating a claim or issue in federal court, the federal court must apply the res judicata rules of the state court in which the prior judgment was rendered.  See Manufactured Home Communities, Inc. v. City of San Jose, 420 F.3d 1022, 1031 (9th Cir. 2005); Pedrina v. Chun, 906 F. Supp. 1377, 1399 (D. Haw. 1995), aff'd 97 F.3d 1296 (9th Cir. 1996).

Under Hawaii case law, "res judicata comprises two separate doctrines or rules" of preclusion: "res judicata" and "collateral estoppel."  In re Dowsett Trust, 7 Haw. App. 640, 644, 791 P.2d 398, 401 (Haw. Ct. App. 1990); see also Santos v. State of Hawaii, 64 Haw. 648, 651-652, 646 P.2d 962, 965 (Haw. 1982).  Generally, the doctrines of res judicata and collateral estoppel prevent parties from relitigating claims or issues that have already been decided by a competent tribunal.  See Pedrina, 906 F. Supp. at 1398; Santos, 64 Haw. at 651-652.

14

Under the doctrine of res judicata,

The judgment of a court of competent jurisdiction is a
bar to a new action in any court between the same
parties or their privies concerning the same subject
matter, and precludes the relitigation, not only of the
issues which were actually litigated in the first
action, but also all grounds of claim and defense which
might have been properly litigated in the first action
but were not litigated or decided.

Bush v. Watson, 81 Haw. 474, 479-480, 918 P.2d 1130, 1135-1136

(Haw. 1996) (quoting Morneau v. Stark Enters., Ltd., 56 Haw. 420,

422-423, 539 P.2d 472, 474-475 (Haw. 1975)); see also Aga v.

Hundahl, 78 Haw. 230, 248, 891 P.2d 1022, 1040 (Haw. 1995).

Collateral estoppel (also known as issue preclusion) is not

alleged in this case.

The three critical issues to which Hawaii courts look

in determining whether the doctrine of res judicata is applicable

are: (1) "Was the issue decided in the prior adjudication

identical with the one presented in the action in question?" (2)

"Was there a final judgment on the merits?" and (3) "Was the

party against whom the [doctrine] is asserted a party or in

privity with a party to the prior adjudication?"  See Santos, 64

Haw. at 653; see also Bush, 81 Haw. at 480.

This Court has previously framed the analysis under

these three critical issues as the following: "Claim preclusion

is applicable only where (1) the claim asserted in the action in

question was or could have been asserted in the prior action; (2)

the parties in the present action are identical to, or in privity

15

with, the parties in the prior action; and (3) a final judgment on the merits was rendered in the prior action."  <u>Pedrina</u>, 906 F. Supp. at 1399.

On February 19, 2004, Plaintiff filed a complaint ("State Complaint") in Hawaii State Court, entitled <u>Stanley v. Sears and Roebuck, et al.</u>, Civ. No. 04-1-0312-02.  The State Complaint contained many of the same factual allegations that are currently before this Court.  Plaintiff's case was ultimately dismissed for want of service pursuant to Rule 28 of the Circuit Courts of the State of Hawaii.  MSJ Opposition (Ex. 2).  At this time, the Court cautions Plaintiff to consider the Court's outline of the principles of res judicata and refrain from filing new claims in this matter if he concludes that such claims would be barred.

## B.   Failure to State a Claim – Rule 12(b)(6)

Claims are dismissed under Rule 12(b)(6) if there are "insufficient facts alleged under a cognizable legal theory." <u>Balistreri</u>, 909 F.2d at 699; <u>Robertson</u>, 749 F.2d at 533-34.  To maintain a Section 1983 claim,[6] a party must establish the

---

[6]  Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

**(Cont.)**

16

following: (1) that a person violated a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law.  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)).

Generally, Section 1983 is not applicable to private parties, although a private party may be liable under Section 1983 if "he is a willful participant in joint action with the State or its agents."  Kirtley, 326 F.3d at 1092 (quoting Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183 (1980).  Ultimately, the Court must assess whether "the alleged infringement of federal rights [is] fairly attributable to the [government]."  Kirtley, 326 F.3d at 1092 (citing Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999) (citation omitted)).  The United States Court of Appeals for the Ninth Circuit has recognized four tests, the satisfaction of only one test being sufficient, to identify state action: "(1) public function; (2)

---

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (2006).

joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." Kirtley, 326 F.3d at 1092 (citing Sutton, 192 F.3d at 835-36; see also Lee v. Katz, 276 F.3d 550, 554 (9th Cir. 2002)).

It is Plaintiff's contention that a combination of Defendants' conduct, the policies of Sears, cooperation between Defendants and the State of Hawaii, and the laws of Hawaii transformed Defendants into state actors.  Ultimately, Plaintiff must be able to prove that Defendants were acting under the color of state law under at least one of the four tests recognized by the Ninth Circuit.  As the allegations indicate that the Defendants each played a different role in the alleged conspiracy, the Court reviews separately the possibility that each Defendant became a state actor.

### 1.  **Defendant Lacey**

Plaintiff has not asserted a valid claim against Mr. "Doe" Lacey, the purported CEO of Sears.  The Amended Complaint's lone allegation against Lacey is that he is responsible for "operations, policies, procedures in effect of all corporations under his direct authority."  Amended Complaint ¶ 3.  Plaintiff cites Reid v. Kayye, 885 F.2d 129, 131 (4th Cir. 1989), in support of the proposition that an individual can be liable in Section 1983 cases on the basis of supervisor liability. According to the Fourth Circuit, supervisor liability is

18

premised, not on respondeat superior, but on a "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in constitutional injuries." Id. at 131-32.

The Fourth Circuit previously explained that the plaintiff bears a high burden of proof in supervisory liability cases. Slakan v. T.C. Porter, 737 F.2d 368, 373 (4th Cir. 1984). The plaintiff must provide evidence that the supervisor's tacit indifference amounts to an authorization of the offensive practices. Id. Identifying a single incident is not sufficient to satisfy the plaintiff's burden. Id.

First, in both Slakan and Reid, the supervisors in question were state actors. The supervisor liability theory does not automatically transform a private actor into a state actor. Second, Plaintiff has provided no evidence that Lacey was the supervisor of Goodwin or any of the security guards working at the Ala Moana Sears. A plaintiff must pinpoint the person in the decision-making chain whose indifference leads to the constitutional abuses. Id. at 373. Plaintiff has made no effort to outline the decision-making chain at Sears, or allege that Lacey had such a role. Third, Plaintiff has provided evidence of only one incident where alleged constitutional violations were carried out by the employees of Sears. For these reasons, the Court believes that it would be futile for Defendant to file any

19

further claims against Lacey.

    2.  **Defendant Sears**

       Based on the Amended Complaint, Plaintiff's claims against Defendant Sears are problematic, even if it is ultimately determined that the security guards acted under the color of state law.  The Supreme Court has stated unequivocally that "respondeat superior or vicarious liability will not attach under § 1983."  Tokuhama v. City and County of Honolulu, 751 F. Supp. 1385, 1394 (D. Haw. 1989) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 1204 (1989)).  Sears can not be liable under Section 1983 for the actions of employee Goodwin, and may only be liable for its own unconstitutional policies under Section 1983.  Otani v. City and County of Hawaii, 126 F. Supp. 2d 1299, 1306-07 (D. Haw. 1998) (citing Sanders v. Sears, Roebuck & Company, 984 F.2d 972, 975-76 (8th Cir. 1993)).

       Courts have found employer liability may exist when the employer is the driving force behind the constitutional violations alleged against its employees, who are operating as state actors.  Bishop v. Toys "R" Us-NY, LLC, 414 F. Supp. 2d 385, 396 (S.D.N.Y. 2006); Temple v. S.O. Albert, 719 F. Supp. 265, 268 ("where a plaintiff alleges a conspiracy between the private employer and its employees *who are acting under the color of state law*, a sufficient basis for potential liability exists") (emphasis added).  "The proper test is whether there is a policy,

custom or action by those who represent official policy that inflicts injury actionable under § 1983." <u>Otani</u>, 126 F. Supp. 2d at 1307 (quoting <u>Sanders</u>, 984 F.2d at 975-76).

In <u>Otani</u>, the court considered an employer's liability under Section 1983 only after assuming both the company's security guards and the employer itself were state actors. 126 F. Supp. 2d at 1307. Even then the court found no evidence of policies or practices of the employer instructing its employees or independent contractors to carry out activity that may violate the Constitution. <u>Id.</u>

Here, there is no basis to assume Sears is a state actor. More importantly, Plaintiff's bald allegations regarding Sears' policies, instructions, or policies are insufficient to support a Section 1983 claim against Sears. In the absence of specific allegations supported by evidence of Sears' participation in an alleged practice that deprives individuals of their constitutional rights, Plaintiff is cautioned against pursuing such claims against Defendant Sears.

### 3.  **Defendant Goodwin**

"Generally, the acts of private security guards, hired by a store, do not constitute state action under § 1983." <u>Josey v. Filene's, Inc.</u>, 187 F. Supp. 2d 9, 16 (D. Conn. 2002) (<u>citing Harris v. Security Co. of 1370 Sixth Avenue</u>, 1996 WL 556927, *2

(S.D.N.Y. 1996); <u>Moher v. Stop & Shop Cos., Inc.</u>, 580 F. Supp. 723 (D. Conn. 1984)); <u>Bishop</u>, 414 F. Supp. 2d at 396-97.   Based on the current allegations offered in the Amended Complaint, it appears that Goodwin did not act under the color of state law and Plaintiff has no Section 1983 claim.   The Court will now briefly outline the four tests under which an individual may be considered a state actor while noting that Plaintiff is discouraged from pursuing further claims against Goodwin in the absence of evidence that satisfies at least one of the tests.

### i.  Public Function

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." <u>Kirtley</u>, 326 F.3d at 1093 (quoting <u>Lee</u>, 276 F.3d at 554-55 (internal quotation marks omitted)).   The public function test is satisfied only with a showing that the function at issue is "both traditionally and exclusively governmental." <u>Id.</u> at 1093 (quoting <u>Lee</u>, 276 F.3d at 555).   Courts have deemed a private actor a state actor if he exercises powers that are traditionally reserved for the State.   <u>Chapman v. The Higbee Co.</u>, 319 F.3d 825, 833 (6th Cir. 2003) (citing examples of holding elections, exercising eminent domain, and operating a company-owned town).

22

The Sixth Circuit recently clarified when a private security guard may be engaging in a public function, and thus be considered a state actor.  The court explained "the line divides cases in which a private actor exercises a power traditionally reserved to the State, but not exclusively reserved to it, e.g., the common law shopkeeper's privilege, from cases in which a private actor exercises a power exclusively reserved to the State, e.g., the police power."  <u>Romanski v. Detroit Entertainment, L.L.C.</u>, 428 F.3d 629, 637 (6th Cir. 2005).  For example, a security guard that could patrol and eject unruly persons from a hospital, but who could not carry a weapon and had to call the police when individuals became belligerent was not a state actor.  <u>See</u> <u>Johnson v. LaRabida Children's Hospital</u>, 372 F.3d 894, 896-97 (7th Cir. 2004); <u>see</u> <u>also</u> <u>Boykin v. Van Buren Township</u>, 2006 WL 305571 (E.D. Mich. 2006) (holding that store loss prevention officers that reported a suspected theft to police officers and conveyed a desire for the suspect to be arrested did not perform a public function).  However, when a Michigan statute authorized a casino security guard to make arrests without a warrant, then the private actor carried out a public function.  <u>Romanski</u>, 428 F.3d at 638 (<u>citing</u> Mich. Comp. Laws §§ 338.1067-1080).  The Court also notes that the Ninth Circuit has held that an individual making a citizen's arrest is not a state actor under the joint action test.  <u>Collins v.</u>

23

WOMANCARE, 878 f.2d 1145, 1154-56 (9th Cir. 1989).

### ii.  Joint Action

In applying the joint action test, courts consider whether "the State has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the State knowingly accepts the benefits derived from unconstitutional behavior." Kirtley, 326 F.3d at 1093 (quoting Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1486 (9th Cir. 1995)).

For example, in Carr v. City of Chicago, 669 F. Supp. 1418 (N.D. Ill. 1987), a hotel security guard took a restaurant patron into custody, called the police, and signed a complaint against the individual. Id. at 1419.  The court held that private security guards are engaged in state action if they enter into agreements with local police under which the guards will act pursuant to the police's instructions.  Id.  By contrast, when a security guard acts independently, his conduct would not be considered state action.  Id.  The Carr court found sufficient evidence in the plaintiff's pleadings that the security guards were acting "pursuant to the policy, practice, or custom of the City of Chicago." Id. at 1419-20.  For example, the complaint alleged that the police "had" the security guard sign a complaint against the plaintiff, signifying some level of control or

24

authority by the police over the guards.  <u>Id.</u> at 1420.

### iii. Compulsion Test

"The compulsion test considers whether the coercive influence or 'significant encouragement' of the State effectively converts a private action into a government action." <u>Kirtley</u>, 326 F.3d at 1094 (<u>citing</u> <u>Sutton</u>, 192 F.3d at 836-37).

### iv.  Governmental Nexus

"The nexus test asks whether 'there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'" <u>Kirtley</u>, 326 F.3d at 1095 (quoting <u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295, 121 S. Ct. 924 (2001)).  "The State must be significantly involved in or actively participate in the alleged conduct" to satisfy the nexus test.  <u>L.T. ex rel. Hollins v. City of Jackson</u>, 145 F. Supp. 2d 750, 761 (S.D. Miss. 2000) (finding insufficient nexus between an off-duty police officer, who while privately employed as a security guard allegedly committed a sexual assault, and the State).  This inquiry is fact specific and ought to be done on a case-by-case basis.  <u>Chapman</u>, 319 F.3d at 834 (<u>citing</u> <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715, 81 S. Ct. 856 (1961)).

25

## III. __Rule 11 Sanctions__

The Court also cautions Plaintiff that Federal Rule of
Civil Procedure 11 permits a court to impose sanctions upon
attorneys, law firms, or parties that violate (or are responsible
for a violation of) the rule's requirements regarding
representations to the court.  __See__ Fed. R. Civ. P. 11(c).  In
pertinent part, Rule 11 prohibits lawyers from filing papers with
the court that are: (1) "presented for any improper purpose, such
as to harass or to cause unnecessary delay or needless increase
in the costs of litigation," or (2) not "warranted by existing
law or by a nonfrivolous argument for the extension,
modification, or reversal of existing law or the establishment of
new law."  __See__ Fed. R. Civ. P. 11(b)(1)-(2); __United National
Insurance Co. v. R&D Latex Corp.__, 242 F.3d 1102, 1115 (2001).

Two competing considerations underlie Rule 11.  On one
hand, attorneys occasionally "engage in litigation tactics so
vexatious as to be unjustifiable even within the broad bounds of
our adversarial system, and . . . neither the other parties nor
the courts should have to abide such behavior or waste time and
money coping with it."  __United National Insurance Co.__, 242 F.3d
at 1115.  On the other hand, "our system of litigation __is__ an
adversary one, and . . . presenting facts and law as favorably as
fairly possible in favor of one's client is the nub of the
lawyer's task."  __Id.__  Accordingly, judges "should impose

26

sanctions on lawyers for their mode of advocacy only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients." Id.

Among other grounds, a district court may impose Rule 11 sanctions if a paper is filed with the court for an improper purpose, or if the paper is frivolous. See G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003); Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1991). An "improper purpose" is a purpose to "harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1); see also G.C. and K.B. Investments, Inc., 326 F.3d at 1110. A "frivolous" filing is one that is "both baseless and made without a reasonable and competent inquiry." Townsend, 929 F.2d at 1362.

"The standard governing both the 'improper purpose' and 'frivolous' inquiries is objective." G.C. and K.B. Investments, Inc., 326 F3d. at 1109 (citing Townsend, 929 F.2d at 1362). Thus, a person's subjective intent to file a meritorious document is of no consequence; a person's conduct is tested against the conduct of a reasonable man, who is a competent attorney admitted to practice before the district court. G.C. and K.B. Investments, Inc., 326 F.3d at 1109 (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir. 1986)).

Subsection (c) of Rule 11 imposes limitations on the

27

nature of the sanctions imposed and how those sanctions may be initiated.  <u>See</u> Fed. R. Civ. P. 11(c).

It is well established that a district court may impose sanctions upon unrepresented litigants pursuant to Rule 11. <u>Warren v. Guelker</u>, 29 F.3d 1386, 1390 (9th Cir. 1994); <u>Vukadinovich v. McCarthy</u>, 901 F.2d 1439, 1445 (7th Cir. 1990); <u>Maduakolam v. Columbia University</u>, 866 F.2d 53, 56 (2d Cir. 1989).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court (1) GRANTS Defendants' Motion to Dismiss without prejudice; (2) DENIES Plaintiff's Motion for Default Judgment; (3) DENIES Defendants' Motion to Strike; and (4) DOES NOT ADDRESS Plaintiffs' Motion for Summary Judgment.

IT IS ORDERED.

DATED: Honolulu, Hawaii, August 7, 2006.

_____
Alan C. Kay
Sr. United States District Judge

<u>STANLEY v. GOODWIN, et al., Civ. No. 05-00716 ACK/LEK: ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE; DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; DENYING DEFENDANTS' MOTION TO STRIKE; AND NOT ADDRESSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>